# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOE DON SHERROD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-0007-CVE-FHM** |
| | ) | |
| **JANET DOWLING, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by petitioner

Joe Don Sherrod, a state inmate appearing pro se. Petitioner challenges his convictions and

sentences in Ottawa County District Court Case No. CF-2010-428, alleging (1) his guilty pleas were

not knowing and voluntary and (2) the state district court abused its discretion by revoking him from

the Ottawa County Drug Court Program and ordering him to serve life in prison. See Dkt. # 1 at 5-

8; Dkt. # 2 at 6-21.[2] Petitioner also challenges the revocation of his suspended sentence in Ottawa

County District Court Case No. CF-2011-138, alleging the state district court abused its discretion

in revoking his 10-year suspended sentence in full. See Dkt. # 1 at 10; # 2 at 21-25. Respondent

filed a response to the petition (Dkt. # 10) and provided the state-court record (Dkt. ## 10, 11)

---

[1]     Petitioner is currently incarcerated at Dick Conner Correctional Center (DCCC) in Hominy,
        Oklahoma. See Dkt. # 22. Janet Dowling, DCCC's warden, is therefore substituted in place
        of Robert Patton as party respondent. See Rule 2(a), Rules Governing Section 2254 Cases
        in the United States District Courts. The Clerk of Court shall note the substitution on the
        record.

[2]     For clarity, the record cites refer to the CM/ECF header page number in the upper right-hand
        corner of each document.

necessary to adjudicate petitioner's claims. Petitioner filed a reply (Dkt. # 14). For the reasons discussed below, the Court shall deny the habeas petition.

## BACKGROUND

In December 2010, Petitioner was charged in Ottawa County District Court, Case No. CF-2010-428, with manufacturing a controlled dangerous substance—methamphetamine (Count 1), possessing a firearm during the commission of a felony (Count 2), possessing a sawed-off shotgun (Count 3), falsely personating another (Count 4), possessing a controlled dangerous substance—marijuana (Count 5), possessing drug paraphernalia (Count 6), and transporting an opened container of beer (Count 7). Dkt. # 2 at 1.

In April 2011, pursuant to a drug court plea agreement, petitioner pleaded guilty to Counts 1-4, and the State dismissed Counts 5-7. Dkt. # 10-8, Plea of Guilty/Summary of Facts, at 2-4; Dkt. # 11-1, Tr. Plea Hr'g (Apr. 22, 2011), at 9-11. Based on his acceptance into the Ottawa County Drug Court Program, the state district court deferred petitioner's sentencing for two years. Dkt. # 11-1 at 11-23. Under the terms of the plea agreement, if petitioner successfully completed the drug court program, he would receive a controlling 21-year suspended sentence. See id. at 15; Dkt. # 11-4, Tr. Mot. Hr'g (Mar. 15, 2013), at 82. If petitioner failed to complete the program, he would receive a controlling life sentence. Dkt. # 11-4 at 82. After a thorough plea colloquy, the state district court found a factual basis for petitioner's pleas, determined that petitioner understood the terms of the plea agreement—including the sentencing terms, determined that his pleas were knowing and voluntary, and accepted his pleas. Dkt. # 11-1 at 7-11, 13-26.

In May 2011, petitioner was charged with one count of extortion in Ottawa County District Court, Case No. CF-2011-138. Dkt. # 11-4 at 35. One month later, petitioner was charged, in

Ottawa County District Court, Case No. CF-2011-183, with conspiring to commit a felony and attempting to bring a controlled dangerous substance into a correctional facility. Id. Based on these new charges the State moved to revoke petitioner from the drug court program. Id. In August 2011, the State dismissed the charges in Case No. CF-2011-183 due to unavailability of a necessary witness. Id. Petitioner then stipulated to the violations alleged in the State's revocation motion and, pursuant to the parties' agreement, the state district court deferred sentencing in Case No. CF-2010-428 and adjudication in Case No. CF-2011-138 to allow petitioner to attend six months of inpatient drug treatment. Id. at 36; Dkt. # 10 at 24.

On April 9, 2012, the State withdrew its revocation motion in Case No. CF-2010-428. Dkt. # 11-4 at 36. Ten days later, petitioner entered a negotiated plea of guilty to one count of extortion in Case No. CF-2011-138. Dkt. # 11-3, Tr. Plea Hr'g (Apr. 19, 2012), at 2-4. In exchange, the State moved to waive the statutory prohibition against imposing a suspended sentence.[3] Id. at 4-5. Following a plea colloquy, the court found a factual basis for the plea, determined the plea was knowing and voluntary, and accepted the plea. Id. at 2-4. The court acknowledged that petitioner was participating in the drug court program and imposed a 10-year suspended sentence. Id. at 5, 7. The court also confirmed that petitioner had reviewed and signed the document listing the rules and conditions of his probation, advised petitioner he would be subject to those rules and conditions for the next 10 years, and explained that if the State proved by a preponderance of the evidence that

---

[3]     The record reflects that, as of April 2011, petitioner had "in excess of three felony convictions." Dkt. # 11-1 at 10. Thus, by the time of his sentencing in Case No. CF-2011-138, he had at least seven prior felony convictions. Under Oklahoma law, district courts ordinarily are prohibited from imposing suspended sentences for "defendants being sentenced upon their third or subsequent to their third conviction of a felony." OKLA. STAT. tit. 22, § 991a(C). However, district courts may waive that statutory prohibition "upon written application of the district attorney." Id.

petitioner violated those rules or conditions the court could revoke his suspended sentence. Id. at 5-6.

On May 15, 2012, petitioner violated the terms of his drug court plea agreement, in Case No. CF-2010-428, by leaving the state without permission.[4] Dkt. # 11-4 at 36. He committed additional violations on May 29, 2012, by failing to return to his treatment facility after he had been given permission to leave, and on June 5, 2012, by failing to appear for drug court. Id. Citing these violations, the State moved on June 8, 2012, to revoke petitioner from the drug court program. Id. at 35-37. The State also charged petitioner with one count of bail jumping in Ottawa County District Court Case No. CF-2012-272, id. at 39,[5] and moved to revoke his 10-year suspended sentence in Case No. CF-2011-138, see Dkt. # 2 at 3.

On March 15, 2013, the state district court held a combined hearing in Case Nos. CF-2012-272, CF-2011-138, and CF-2010-428. Dkt. # 11-4, Tr. Mot. Hr'g (Mar. 15, 2013). After hearing testimony from petitioner and the drug court coordinator, the court (1) revoked petitioner from the drug court program and, pursuant to the drug court plea agreement, imposed four, concurrent life sentences in Case No. CF-2010-428; (2) found probable cause to bind petitioner over on the bail jumping charge in Case No. CF-2012-272; and (3) fully revoked his 10-year suspended sentence in Case No. CF-2011-138 and ordered that sentence to be served concurrently with his life sentence. Id. at 26-27.

---

[4]     Petitioner was arrested on a charge of domestic abuse while he was in Missouri, but that case was later dismissed. Dkt. # 11-4 at 36. Thus, he was sanctioned only for leaving Oklahoma without permission. Id.

[5]     Petitioner raises no habeas claims related to Case No. CF-2012-272, and the Court discusses this case only as background information.

After the combined hearing, petitioner moved to withdraw his guilty pleas in Case No. CF-2010-428. See Dkt. # 11-5, Tr. Mot. Hr'g (Mar. 29, 2013), at 3. Following a hearing, the district court denied that motion. Id. at 17. Petitioner then filed a certiorari appeal (Case No. C-2013-746) with the Oklahoma Court of Criminal Appeals (OCCA), raising one proposition of error: "Judge Haney's denial of [p]etitioner's motion to withdraw his plea constitutes an abuse of discretion because [petitioner] did not knowingly and voluntarily enter his pleas." Dkt. # 10-1, Pet'r Am. Cert. App. Br., at 2.

Petitioner also filed a direct appeal (Case No. RE-2013-290) challenging his termination from drug court and the revocation of his suspended sentence. Dkt. # 10-2, Pet'r Dir. App. Br., at 9. In his direct appeal he raised two propositions of error:

Proposition 1:     The district court abused its discretion by prematurely terminating [petitioner's] participation in drug court, in lieu of imposing further disciplinary sanctions against [petitioner].

Proposition 2:     The district court abused its discretion in revoking [petitioner's] suspended sentence.

Id. at 2.

On June 5, 2014, the OCCA issued an unpublished summary opinion in Case. Nos. C-2013-746 and RE-2013-290, denying the petition for writ of certiorari, affirming the judgment and sentence in Case No. CF-2010-428, affirming the state district court's order terminating petitioner from the drug court program, and affirming the court's order revoking his suspended sentence in Case No. CF-2011-138. Dkt. # 10-5, Sherrod v. State, Nos. C-2013-746, RE-2013-290 (Okla. Crim. App. 2014) (unpublished) (hereafter, "OCCA Op."), at 5.

Petitioner filed the instant federal petition for writ of habeas corpus (Dkt. # 1), along with a supporting brief (Dkt. # 2), on January 5, 2015.

*ANALYSIS*

Petitioner seeks habeas relief on the same three grounds he asserted in his certiorari and direct appeals:

Ground 1:      Judge Haney's denial of petitioner's motion to withdraw his pleas constitutes an abuse of discretion because petitioner did not knowingly and voluntarily enter his pleas.

Ground 2:      The district court abused its discretion by prematurely terminating petitioner's participation in drug court, in lieu of imposing further disciplinary sanctions against petitioner.

Ground 3:      The state district court abused its discretion in revoking petitioner's suspended sentence.

Dkt. # 1 at 5-8, 10.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Id. § 2254(a). In addition, before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies, id. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," Hawkins v. Mullins, 291 F.3d 658, 668 (10th Cir. 2002). And, in most cases, the prisoner must file a federal habeas petition within one year of the date on which his convictions became final. See 28 U.S.C. § 2244(d)(1).

Respondent concedes, and the Court finds, that petitioner timely filed his federal habeas petition and exhausted state remedies by presenting his claims to the OCCA. Dkt. # 10 at 2. Because the OCCA adjudicated petitioner's claims on the merits, the Court may not grant habeas relief unless petitioner demonstrates that the OCCA's adjudication of those claims "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by Supreme Court of the United States," *id.* § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § 2254(d)(2). In applying § 2254(d)'s "highly deferential standard," the Court must give the OCCA's decision the "benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). The Court must also presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As to the claims petitioner asserts in Grounds 2 and 3, § 2254(d)'s deferential standard may not apply. The Tenth Circuit has explained that "a state prisoner's federal habeas challenge to the validity of an underlying conviction or sentence must typically be brought under § 2254." Leatherwood v. Allbaugh, 861 F.3d 1034, 1042 (10th Cir. 2017). However, "[a] state prisoner's challenge to the revocation of a suspended sentence is properly brought under § 2241" because it challenges the execution, rather than the validity, of the sentence. Id. at 1041-42. To the extent petitioner's claims in Grounds 2 and 3 challenge the execution of his sentences, the Court will adjudicate his petition under § 2241 and review those claims de novo. See id. at 1042-43 (explaining that habeas claims raised in § 2254 petitions are reviewed under § 2254(d)'s deferential standards whereas habeas claims raised in § 2241 petitions are reviewed de novo).

In any event, for the reasons discussed below, the Court agrees with respondent that petitioner is not entitled to federal habeas relief on any of his claims.

## I.     Validity of guilty pleas in Case No. CF-2010-428

In Ground 1, Petitioner claims his guilty pleas in Case No. CF-2010-428 were not knowing and voluntary.  Dkt. # 2 at 6.  He specifically alleges he did not understand "the punishment that he would receive, based upon what he was told by his trial counsel" and therefore could not make "the crucial decision to begin the [d]rug [c]ourt program by entering knowing and voluntary guilty pleas that could be considered to be free of coercion or confusion."  Id. at 8.  Petitioner further alleges "[a]t the time he entered his pleas, [he] was under the influence of methamphetamine and alcohol." Id. at 11.

A federal court reviewing a guilty plea taken in state court may set aside a guilty plea only if it fails to satisfy due process.  To satisfy due process, a guilty plea must be knowing, intelligent, and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); see also Hill v. Lockhart, 474 U.S. 52, 56 (1985) (noting that a plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970))).  Due process requires, in part, that the defendant understand the direct consequences of his guilty plea.  See United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002) ("The defendant need not understand every collateral consequence of the plea, but need only understand its direct consequences.").  At a minimum, this means the defendant must understand the nature of the charges against him, the maximum penalties that may be imposed, and the constitutional rights he is waiving by entering a plea.  Brady v. United States, 397 U.S. 742, 756-57 (1970); Boykin, 395 U.S. at 242-44; see also Worthen v. Meachum, 842 F.2d 1179, 1182 (10th Cir. 1988), overruled on other grounds by Coleman v. Thompson, 501 U.S. 722 (1991) (explaining that "[a] plea is not voluntary unless the defendant knows the direct consequences of his decision, including the

maximum penalty to which he will be exposed.").  The determination that a guilty plea is knowing and voluntary, and therefore comports with due process, "is a question of federal law, but this legal conclusion rests on factual findings and inferences from those findings." Fields v. Gibson, 277 F.3d 1203, 1212 (10th Cir. 2002).

In rejecting petitioner's challenge to the validity of his guilty pleas,  the OCCA cited Hopkins v. State, 764 P.2d 215, 216 (Okla. Crim. App. 1988), for the proposition that the legal "standard for determining the validity of [a] guilty plea is whether [the] plea represents a voluntary and intelligent choice among the courses of action open to the defendant." Dkt. # 10-5, OCCA Op., at 3.  Applying this standard, the OCCA found "that the district court properly advised [petitioner] of his rights, that he knowingly waived those rights, and that he understood the legal consequences at the time he entered his guilty pleas." Id.  Thus, the OCCA concluded, petitioner's pleas were knowing and voluntary and the district court did not abuse its discretion in denying petitioner's motion to withdraw his pleas.  Id.

Petitioner generally contends the OCCA's decision is contrary to and an unreasonable application of clearly established federal law and, in addition, is based on an "unreasonable application of the facts" of this case.  Dkt. # 2 at 14.  However, his arguments appear to primarily challenge the factual underpinnings of the OCCA's determination that his pleas were knowing and voluntary.  See, e.g., Dkt. # 2 at 7-8 (citing his own testimony from plea withdrawal hearing as evidence that he did not understand consequences of his pleas); Dkt. # 14 at 4-5 (citing perceived deficiencies in guilty plea form); Dkt. # 14 at 10-12 (citing plea hearing transcript and arguing plea hearing with multiple defendants demonstrates petitioner was confused).

Respondent contends petitioner cannot make the requisite showings under § 2254(d) to obtain habeas relief on this claim. Dkt. # 10 at 7-21. For the following reasons, the Court agrees.

First, by citing Hopkins, the OCCA correctly identified the federal law governing petitioner's claim. See Hopkins, 764 P.2d at 216 (citing prior state case adopting Alford standard as standard for determining validity of guilty pleas). Thus, petitioner cannot demonstrate that the OCCA's decision was "contrary to" clearly established Supreme Court law. See Williams v. Taylor, 529 U.S. 362, 406 (2000) (noting that "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Second, the OCCA did not apply the correct legal principle in an "objectively unreasonable manner." See Bell v. Cone, 535 U.S. 685, 699 (2002) (explaining that when state court applies correct federal law to deny relief, sole question for federal habeas court is whether state court applied federal law "in an objectively unreasonable manner"). Admittedly, the OCCA's legal analysis is concise. See Dkt. # 10-5, OCCA Op., at 3. But the Court cannot say that it is wrong, much less that it is clearly erroneous. See White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (stating that an unreasonable application of Supreme Court holdings by state court is "not merely wrong; even 'clear error' will not suffice"). To support his assertion that the OCCA unreasonably applied clearly established federal law, petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). He fails to make that showing here.

Third, and finally, because the state-court record amply supports the OCCA's determination that petitioner's pleas were knowing and voluntary, petitioner cannot demonstrate that the OCCA's decision was based on an unreasonable determination of the facts. See Smith v. Duckworth, 824 F.3d 1233, 1241 (10th Cir. 2016) (noting that petitioner must do more than show that "reasonable minds reviewing the record might disagree about the finding in question" to demonstrate that state court based its ruling on an unreasonable determination of the facts (quoting Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015)); Wood v. Allen, 558 U.S. 290, 301 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance").[6]

Significantly, in determining whether a plea is knowing and voluntary, courts may consider answers a defendant has provided on written forms relevant to the plea. Hoffman v. Young, 23 F. App'x 885, 887 (10th Cir. 2001) (unpublished).[7] Here, petitioner signed a form entitled "Plea of Guilty/Nolo Contendere Summary of Facts." Dkt. # 10-8. In doing so, petitioner swore, inter alia, that he understood the nature of the charges against him, id. at 2, that he understood that two of his charges carried a minimum sentence of 20 years and that all four charges carried a maximum sentence of life, id. at 3, and that he was pleading guilty "of [his] own free will and without any coercion or compulsion of any kind," id. at 5. He also swore that he was not "taking any

---

[6]    In Brumfield, the Supreme Court noted that it has "not yet 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1).'" 135 S. Ct. at 2282. However, as further discussed in this opinion, even without applying § 2254(e)(1)'s presumption of correctness to the OCCA's findings, the Court finds that the OCCA's decision is not based on an unreasonable determination of the facts under § 2254(d)(2) because the record amply supports the OCCA's findings.

[7]    The Court cites this decision, and other unpublished decisions herein, as persuasive authority. See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

medications or substances which [would] affect [his] ability to understand [the plea] proceedings." Id. at 1. Petitioner also signed a drug court performance contract, indicating that he understood that if the court determined, after a hearing, that his revocation from the drug court program was warranted he would "be sentenced according to [his] plea agreement. Dkt. # 11-4 at 79-80. Finally, petitioner signed "Exhibit A" to the drug court plea agreement. Id. at 82. This document provides (in all caps and boldface type) that if petitioner successfully completed the drug court program he would receive a controlling 21-year suspended sentence and if he withdrew from or was terminated from the program he would receive a controlling life sentence. Id. This documentary evidence of petitioner's statements supports that petitioner's pleas were knowing and voluntary.

Likewise, while they are not conclusive on the question of whether petitioner's pleas comport with due process, his in-court statements made during the plea hearing as to the knowing and voluntary nature of his pleas are accorded a strong presumption of reliability. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (noting that "representations of the defendant . . . at [a plea] hearing as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"). Here, petitioner testified, under oath and in open court, that he understood the trial rights he would be waiving by entering his guilty pleas and that he had not been threatened or coerced into pleading guilty. Dkt. # 11-1 at 6-7. He further testified he had reviewed the drug court performance contract and the drug court plea agreement and he had signed both documents. Id. at 12-13. Finally, when the state district court discussed the consequences of failing to comply with the drug court plea agreement—specifically, that withdrawing from the program or being terminated would result in imposition of "the sentences contained within the second part of th[e] plea agreement"— petitioner testified he understood those consequences. Id.

at 13-23. Petitioner's sworn statements from the plea hearing also support the OCCA's determination that his pleas were knowing and voluntary.

Though not clear, petitioner appears to argue that the OCCA should have disregarded the written and oral statements he made in conjunction with entering his guilty pleas, and instead should have found his pleas were not knowing and voluntary based on his testimony from the March 29, 2013, hearing on his motion to withdraw his pleas. See Dkt. # 2 at 7-14; Dkt. # 14. At that hearing, petitioner testified he was "high" on methamphetamine and alcohol during the plea hearing, his plea counsel coerced him into the drug court plea agreement by telling him he "had no choice but to take the deal" because he was looking at a 40-year sentence, and he didn't understand the sentencing consequences of the plea agreement. Dkt. # 11-5 at 4-6.

But the transcript from the plea withdrawal hearing also reflects that the same district court judge who accepted petitioner's pleas as knowing and voluntary found petitioner's plea withdrawal hearing testimony did not support his requests to withdraw his pleas. Specifically, the judge recalled that petitioner did not "stumble around" at the plea hearing or otherwise appear intoxicated. Id. at 13. The judge also recalled that he "talked extensively about" the terms of the drug court plea agreement at the plea hearing, and that petitioner responded appropriately to the judge's questions regarding petitioner's understanding of those terms. Id. As to petitioner's assertion that he was coerced by plea counsel, the judge found that petitioner's signed guilty plea form reflected that two of his charges each carried a minimum of twenty years, thus plea counsel's statement that petitioner was facing a possible 40-year sentence was realistic rather than coercive. Id. at 14. Those findings carry great weight. See Allison, 431 U.S. at 74. And the OCCA's decision based on those findings is entitled to AEDPA deference. See 28 U.S.C. § 2254(d)(2); Smith, 824 F.3d at 1241.

In sum, the state-court record fully supports the OCCA's determination that petitioner's pleas in Case No. CF-2010-428 were knowing and voluntary and its rejection of his due-process claim. Thus, the Court denies habeas relief on Ground 1.

## II. Termination from drug court program in Case No. CF-2010-428

In Ground 2, petitioner claims that the state district court abused its discretion by failing to impose lesser disciplinary sanctions, as authorized by state law, before terminating his participation in the drug court program. Dkt. # 2 at 14.

Respondent contends petitioner is not entitled to habeas relief on this claim because petitioner alleges an error of state law only. Dkt. # 10 at 21-27.

Under § 2254(a), a state prisoner is entitled to federal habeas relief "'only on the ground' that his custody violates federal law." Wilson v. Corcoran, 562 U.S. 1, 6 (2010). Here, relying on provisions of the Oklahoma Drug Court Act, OKLA. STAT. tit. 22, §§ 471-471.11, petitioner argued in his direct appeal that the state district court abused its discretion by failing to impose lesser sanctions before terminating his participation in the drug court program. See Dkt. # 10-2, Pet'r. Dir. App. Br., at 12-19. The OCCA rejected this argument. It found, under the circumstances of this case, the state district court did not abuse its statutory discretion by failing to impose lesser sanctions. Dkt. # 10-5, OCCA Op., at 3-4. The OCCA specifically found that petitioner "absconded from drug court and committed a new felony offense, possibly as a result of his belief that he would be terminated from the program based on outstanding warrants for his arrest." Id. at 3-4. The OCCA further found that petitioner's "actions were apparently unrelated to ongoing substance abuse

and not the result of a relapse," and "[t]he evidence indicated no reasonable alternative to terminating [petitioner] from drug court." Id. at 4.[8]

The Court agrees with respondent that petitioner's Ground 2 claim alleges an error of state law only. In his supporting brief, petitioner essentially asks this Court re-examine the OCCA's determination that the state district court did not erroneously apply OKLA. STAT. tit. 22, § 471.7(E) to the facts of this case. Dkt. # 2 at 14-21. But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Moreover, federal habeas courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2002). As respondent contends, the "drug court program is a type of diversionary sentence, 'an immediate and highly structured judicial intervention process for substance abuse treatment of eligible offenders which expedites the criminal case, and requires successful completion of the plea agreement in lieu of incarceration.'" Dkt. # 10 at 23 (quoting Hagar v. State, 990 P.2d 894, 897 (Okla Crim. App. 1999)). See also OKLA. STAT. tit 22, § 471.1 (A) (2011). The state district court's decision to remove petitioner from the drug court program is, essentially, similar to a decision to revoke a suspended sentence. And challenges to the revocation of a suspended sentence generally are not constitutionally cognizable, unless it is shown

---

[8]     The Oklahoma Drug Court Act provides, in relevant part, that the "drug court judge should recognize relapses and restarts" as part of the offender's recovery process and "order[] progressively increasing sanctions . . . rather than removing the offender from the program, except when the offender's conduct requires revocation from the program." OKLA. STAT. tit. 22, § 471.7(E).

that the "decision is so fundamentally unfair that it implicates federal due process." Leatherwood, 861 F.3d at 1043.

In his supporting brief, petitioner makes a passing reference to "due process" and appears to argue that the state district court failed to comply with state-law procedural requirements before terminating his participation in the drug court program. Dkt. # 2 at 15. Petitioner also cites Justice Marshall's concurring opinion in Black v. Romano, 471 U.S. 606, 620 (1985), for the proposition that "the decision to revoke probation must be based on a probation violation that logically undermines the State's initial determination that probation is the appropriate punishment for the particular defendant." Dkt. # 2 at 16.

The Court finds that petitioner's brief reference to "due process" is not sufficient to state a cognizable habeas claim. See Leatherwood, 861 F.3d at 1043 (noting that "[a] habeas applicant cannot transform a state law claim into a federal one merely by attaching a due process label"). However, even if this Court liberally construes petitioner's pro se brief as sufficiently alleging a due process claim, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies de novo review,[9] the Court finds that petitioner is not entitled to habeas relief.

First, the record does not support a procedural due process claim. Significantly, before removing an offender from the drug court program, the drug court judge must (1) provide notice, (2) hold a revocation hearing, and (3) make findings that the offender committed the alleged

---

[9]     Petitioner contends the OCCA's decision on this claim "is 'contrary to' and 'an unreasonable application of' clearly established decisions by the OCCA and the U.S. Supreme Court as cited herein." Dkt. # 2 at 20. He contends the decision "is also an 'unreasonable application of' the facts of this individual case." Id. These arguments rely on § 2254(d). However, as previously stated, petitioner's Ground 2 claim appears to challenge the execution of his sentence rather than its validity. Thus, this claim appears to be subject to de novo review. See Leatherwood, 861 F.3d at 1042-43.

violations of his performance contract and that "disciplinary sanctions have been insufficient to gain compliance." OKLA. STAT. tit. 22, § 471.7(E). These statutory requirements rest upon the twin pillars of constitutional due process: notice and an opportunity to be heard. See Onyx Props. LLC v. Bd. of Cty. Comm'rs., 838 F.3d 1039, 1044 (10th Cir. 2016) ("The essence of procedural due process is the provision to the affected party of *some* kind of notice and . . . *some* kind of hearing." (alterations and emphases in original) (quoting Moore v. Bd. of Cty. Comm'rs, 507 F.3d 1257, 1259 (10th Cir. 2007)); see also Leatherwood, 861 F.3d at 1044 (discussing procedural due process protections relevant to revocation of suspended sentences). Here, the record reflects that the State filed a written motion to revoke petitioner from the drug court program, the state district court held a revocation hearing, and the court made the necessary findings under state law to support its revocation decision. See Dkt. # 11-4 at 3-18, 26. Thus, the Court finds no support in the record for any alleged procedural due process violation.

Second, the Court finds no support in the record for any alleged substantive due process violation. The Tenth Circuit has explained that the revocation of a suspended sentence may violate substantive due process "when it is 'fundamentally unfair or arbitrary.'" Leatherwood, 861 F.3d at 1045 (quoting Bearden v. Georgia, 461 U.S. 660, 666 (1983)). But substantive due process only "guards against the arbitrary exercise of governmental power that shocks the conscience." See id. at 1046 n.11. Here, applying these principles to the revocation of petitioner from the drug court program, the Court finds nothing in the record to support a conclusion that the state district court's decision was either fundamentally unfair or so arbitrary as to be conscience shocking. The record demonstrates that after being accepted into the drug court program, petitioner was charged with multiple felonies and convicted of at least one, and for that conviction he was given a 10-year

suspended sentence to accommodate his continued participation in the drug court program. Dkt. # 11-3 at 4-7. Notably, before imposing that sentence, the state district court honored the parties' agreement to delay the sentencing hearing for six months to allow petitioner to attend six months of inpatient drug treatment. Dkt. # 10 at 24. And, as the OCCA found, the record also reflects that petitioner repeatedly violated the terms of his drug court plea agreement—not only by committing new criminal offenses, but also by leaving the state without permission, failing to return to the treatment center after being granted a limited pass, and failing to attend drug court. Dkt. # 11-4 at 35; see also Dkt. # 10-5, OCCA Op., at 3-4. Finally, the state district court considered petitioner's testimony at the revocation hearing as to why he should be allowed to remain in the drug court program despite his repeated violations of the performance contract. See Dkt. # 11-4 at 15-18. Specifically, petitioner testified that he did well in the program before he stopped participating, and that he stopped participating because he learned he had outstanding warrants and assumed he would "be doing life anyway," so he fled "to stay out as long as [he]could and be as free as [he] could." Id. at 14-17. In finding that revocation was warranted, the state district court balanced petitioner's history of noncompliance with program requirements with his explanation for his noncompliance and determined that the scales did not tip in petitioner's favor. Id. at 17-18. On this record, the Court finds no support for any alleged substantive due process violation.

In sum, petitioner's Ground 2 claim alleges an error of state law, not a cognizable habeas claim. Even if the Court liberally construes his claim as alleging either a procedural or substantive due process claim, each of those claims fails on the merits. For these reasons, the Court denies habeas relief on Ground 2.

### III. Revocation of suspended sentence in Case No. CF-2011-138

Finally, in Ground 3, petitioner claims the state district court abused its discretion in fully revoking his 10-year suspended sentence in Case No. CF-2011-138. Dkt. # 2 at 21. He acknowledges that he "did not follow all the rules of his probation" but argues the court should have ordered only a partial revocation rather than a full revocation. Id. at 23.

Respondent contends this claim alleges an error of state law only and petitioner is therefore not entitled to habeas relief. Dkt. # 10 at 27-31.

As previously stated, this Court may grant federal habeas relief to a state prisoner "'only on the ground' that his custody violates federal law." Wilson, 562 U.S. at 6; see 28 U.S.C. § 2254(a). Relying primarily on state law, petitioner argued in his direct appeal that the state district court abused its discretion by fully revoking his suspended sentence. See Dkt. # 10-2, Pet'r. Dir. App. Br., at 20-24. The OCCA rejected this argument. Relying on state law, the OCCA explained that, "[o]nce the State presented evidence that [petitioner] left the State without permission and failed to pay probation fees, [petitioner's] burden was to show that these acts were not intentional, that he made a good faith effort to comply, or to offer some evidence in mitigation against revocation of his suspended sentence." Dkt. # 10-5, OCCA Op., at 4. The OCCA then reasoned that petitioner failed to meet that burden. Id. at 4. It found that while petitioner "explained that he fled to avoid arrest on pending warrants, and offered mitigation that he had done well in drug court," the state "district court was familiar with [petitioner's] attitude and criminal history." Id. The OCCA concluded that these facts did not show "an abuse of discretion in the decision to revoke [petitioner's] suspended sentence in full." Id. at 4-5.

The Court agrees with respondent that petitioner's Ground 3 claim alleges an error of state law only. As in Ground 2, petitioner essentially asks this Court to reconsider the OCCA's determination to affirm the state district court's sentencing decision. But a state trial court's decision to revoke a suspended sentence is governed by state law, and challenges to that decision are not generally constitutionally cognizable, unless it is shown that the "decision is so fundamentally unfair that it implicates federal due process." Leatherwood, 861 F.3d at 1043; see also Dennis, 222 F.3d at 1258 (noting that on habeas review "challenges to [a state court's sentencing] decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law").

Again, petitioner attempts to frame his sentencing challenge as a federal due process claim by citing Justice Marshall's concurring opinion in Black v. Romano. Dkt. # 2 at 22-23. In addition, he cites Bearden v. Georgia, 461 U.S. 660 (1983), and Gagnon v. Scarpelli, 411 U.S. 778 (1973), as federal law supporting his claim that the state district court erred in fully revoking his suspended sentence. Id. Even liberally construing petitioner's Ground 3 claim as one alleging a due process violation and applying de novo review,[10] the Court agrees with respondent that petitioner is not entitled to habeas relief.

First, to the extent petitioner alleges a procedural due process claim, the record does not support a conclusion that he was denied procedural due process. The State filed a written motion

---

[10]     As he did in his Ground 2 claim, Petitioner contends the OCCA's decision on his Ground 3 claim "is 'contrary to' and 'an unreasonable application of' clearly established decisions by the OCCA and the U.S. Supreme Court as cited herein." Dkt. # 2 at 20. He contends the decision "is also an 'unreasonable application of' the facts of this individual case." Id. Again, these arguments assume that § 2254(d) governs his claims that appear to challenge the execution, rather than the validity of his sentences. However, as previously stated, these claims appear to be subject to de novo review. See Leatherwood, 861 F.3d at 1042-43.

to revoke his suspended sentence, the state district court held a hearing on that motion, and the court considered petitioner's mitigation evidence. See Dkt. # 11-4. These facts support that petitioner was afforded procedural due process. See Onyx Props. LLC, 838 F.3d at 1044; Leatherwood, 861 F.3d at 1044. Thus, the Court finds no support in the record for any alleged procedural due process violation.

Second, the record does not support a conclusion that petitioner was denied substantive due process. As discussed, to establish that the state district court's revocation decision violates substantive due process petitioner must show that the decision was "fundamentally unfair or arbitrary." Leatherwood, 861 F.3d at 1045 (quoting Bearden, 461 U.S. at 666). And the decision must be arbitrary in the sense "that [it] shocks the conscience." See id. at 1046 n.11. Under the facts of this case, the Court finds nothing fundamentally unfair or shocking about the state district court's decision to fully revoke petitioner's 10-year suspended sentence. As the OCCA found, the state "district court was familiar with [petitioner's] attitude and criminal history" and both demonstrated that petitioner was not amenable to probation. See Dkt. # 10-5, OCCA Op., at 4-5. Thus, the Court finds no support in the record for any alleged substantive due process violation.

In sum, petitioner's Ground 3 claim alleges an error of state law, not a cognizable habeas claim. And, even liberally construing this claim as alleging either a procedural or substantive due process claim, each of those claims fails on the merits. For these reasons, the Court shall denies habeas relief on Ground 3.

## *CONCLUSION*

Based on the foregoing analysis, the Court concludes that petitioner has not established he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, the Court denies his petition for writ of habeas corpus.

### Certificate of Appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court dismisses a habeas petition by rejecting the merits of petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). However, when the district court dismisses the petition on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> For the reasons discussed in the analysis section of this opinion, the Court finds that petitioner has not made the requisite showings on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.    The Clerk of Court shall note the substitution of Janet Dowling, Warden, in place of Robert Patton, Director, as party respondent.

2.      The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate judgment shall be entered in this case.

      **DATED** this 20th day of March, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE